FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 SEP -7 PM 4:20

ENTERED

SEP 0 7 1999

| | |
|---|---|
| WILD ALABAMA, et al., <br> Plaintiffs, <br><br> v. <br><br> BRUCE BABBIT, Secretary of the Interior, and UNITED STATES FISH AND WILDLIFE SERVICE <br> Defendants. | CV-99-0093-S |

### Opinion

Before this Court is a motion by the Defendants to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons expressed herein, the Defendants' motion to dismiss is hereby granted.

### Introduction

Under Section 4 of the Endangered Species Act ("ESA"), the Secretary of the Interior ("Secretary") is required to make determinations about the status of certain species, including whether a given species qualifies for designation as endangered or threatened. See 16 U.S.C. § 1533 (a)(1). At the time that the Secretary designates a species as threatened or endangered, a critical habitat[1] must also be designated "to the maximum extent prudent and determinable." 16 U.S.C. § 1533 (a)(3); 16 U.S.C. § 1533 (b)(6)(C). The Secretary may make a determination that designating a critical habitat is "not prudent" when one or both of the following situations exist:

(1)   the species is threatened by taking or other human activity, and identification of the

---

[1] "Critical Habitat" for a threatened or endangered species is defined as follows:
   (i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section 1533 of this title, on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and

   (ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 1533 of this title, upon a determination by the Secretary that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A).

15

>   critical habitat can be expected to increase the degree of such threat to the species, or
>
> (2)  such designation of critical habitat would not be beneficial to the species.

50 C.F.R. 424.12(a)(1).

This decision of whether designation is "prudent" is made on a "case-by-case basis" and must be made based upon "the best scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat." 16 U.S.C. § 1533(b)(2); 50 C.F.R. § 424.12(a); 49 Fed. Reg. 38908, 38903 (1984).

## Facts

On March 19, 1990, the U.S. Fish and Wildlife Service ("FWS") published a proposed rule to list the Cahaba shiner[2] as an endangered species. 55 Fed. Reg. 10083 (1990). This proposed rule included a proposal to not designate critical habitat for the Cahaba shiner because it was not prudent. Id. Subsequent to the publishment of the proposed rule, a public hearing was held on the proposal and a public comment period was opened. 55 Fed. Reg. 24133 (1990). As a result, a total of 455 comments and a petition with 289 signatures were received with respect to the proposed rule. 55 Fed. Reg. 42961, 42963 (1990). A final regulation was promulgated by the FWS on October 25, 1990 that listed the Cahaba shiner as an endangered species and determined that a designation of critical habitat was not prudent at that time. This regulation became effective on November 26, 1990. 55 Fed. Reg. 42963. Following the 1998 discovery of a new population of the Cahaba shiner in a river system north of Birmingham, Plaintiffs filed this suit on January 19, 1999 against the Secretary and the FWS challenging this final regulation's failure to include critical habitat for the Cahaba shiner. On May 17, 1999, Defendants filed a motion to dismiss this action, arguing that Plaintiffs' claims are barred by the six year statute of limitations of 28 U.S.C. § 2401(a).

## Discussion

### A.  28 U.S.C. § 2401(a)

28 U.S.C. § 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." This limitations period represents a pervasive legislative judgment that "the right to be free of stale claims in time comes to prevail over the right to prosecute them" and should be construed as a condition of the waiver of sovereign immunity by the United States. United States v. Kubrick, 444 U.S. 111, 117 (1979)(quoting Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 349 (1944)). Therefore, courts must strictly adhere to the limitations period of § 2401(a) and not take it upon themselves "to extend the waiver beyond that which Congress intended." Id.

---

[2] The shiner is a small, silvery-colored fish about 2.5 inches long which is found only in certain portions of Alabama.

It is well established that challenges to agency action may be defeated by the protection which 28 U.S.C. § 2401(a) provides. Courts have continually recognized that the six year limitation period is applicable in environmental settings and with respect to the promulgation of agency regulations. See, e.g., Wind River Mining Corp. v. United States, 946 F.2d 710, 715 (9th Cir. 1991)(procedural violations in the adoption of a regulation or other agency action or policy-based facial challenges to government decisions must be brought within six years of the decision); Sierra Club v. Penfold, 857 F.2d 1307, 1315 (9th Cir. 1988)(holding that a NEPA challenge brought under the Administrative Procedure Act was a civil action commenced against the U.S. for the purposes of § 2401(a)); Geyen v. Marsh, 775 F.2d 1303, 1308 (5th Cir. 1995)("[T]he six year statute of limitations in § 2401(a) applies to suits seeking nonmonetary relief through nonstatutory review of agency action"). More specifically, courts have imposed the six-year statute of limitations of § 2401(a) on claims brought under the Endangered Species Act. See, e.g., Kentucky Heartwood, Inc. v. Worthington, 20 F. Supp. 2d 1076 (E.D. Ken. 1998)(ESA challenge by environmental organizations to the validity of a Forest plan established by the Forest Service was barred by § 2401(a)); Broadened Horizons Riverkeepers v. U.S. Army Corps of Engineers, 8 F. Supp. 2d 730, 736, n. 9 (E.D. Tenn. 1998); Strahan v. Linnon, 967 F. Supp. 581, 607 (D. Mass. 1997)(§ 2401(a) applies to suits brought against agencies for actions allegedly violative of the ESA).

### B.  Plaintiffs' Claims

Despite the fact that Plaintiffs admit that more than six years have passed from the Defendants' failure to designate critical habitat for the Cahaba shiner, Plaintiffs contend that 28 U.S.C. § 2401(a) is inapplicable to the case at bar because the Secretary of the Interior and FWS's duties under the ESA are mandatory and ongoing. They argue that cases which have applied the statute of limitations to ESA claims have involved specific violations of the ESA by other federal agencies or claims brought under the Administrative Procedure Act ("APA"). In support of their contentions, Plaintiffs rely heavily on Natural Resources Defense Council v. Fox, 909 F. Supp. 153 (S.D.N.Y. 1995), a New York District Court case involving claims brought under the Clean Water Act ("CWA"). In NRDC v. Fox, the State of New York failed to promulgate and submit certain pollution limits for New York waters, Total Maximum Daily Loads ("TMDLs"), to the EPA for review and approval as required by the Clean Water Act. 909 F. Supp. at 156. New York's failure to comply with the requirements of the CWA triggered a mandatory duty by the EPA to develop and set the TMDLs for New York State Waters. Id. at 157. The court ultimately found that the EPA's failure to comply with this duty was not protected by the six year limitations period of 28 U.S.C. § 2401(a) because the duty was non-discretionary and continuous, and "it would be perverse to excuse [it] after sustained nonfeasance." Id. at 159.

Plaintiff's contentions and reliance on NRDC v. Fox are misfounded. A suit against a federal agency for violating the ESA, whether brought under the citizen's suit provision of the ESA or the APA, is not procedurally distinguishable simply because the Secretary of Interior and Fish and Wildlife Service are named as defendants. The statute of limitations of 28 U.S.C. § 2401(a) also applies equally to claims brought under the ESA and claims brought under the APA. See Broadened Horizons Riverkeepers v. U.S. Army Corps of Engineers, 8 F. Supp.2d 730, 736, n. 9 (E.D. Tenn. 1998). In addition, while the Secretary of the Interior and the FWS do have a mandatory duty under the ESA to make a determination regarding critical habitat at a certain time, making an actual

designation of critical habitat is not mandatory, but discretionary. Under the ESA, critical habitat should only be designated "to the maximum extent prudent and determinable." 16 U.S.C. § 1533(a)(3). Critical habitat designations may also be revised from "time to time." Id. This language, by its very nature, suggests that deciding on a designation is discretionary. While recognizing that there are procedural requirements that must be followed in making the decision, the United States Supreme Court has also found that the decision on designation of critical habitat is discretionary. See Bennett v. Spear, 520 U.S. 154, 172 (1997). The Court described the process as follows:

> [T]he fact that the Secretary's ultimate decision is reviewable only for abuse only for abuse of discretion does not alter the categorical requirement that, in arriving at his decision, he 'tak[e] into consideration the economic impact, and any other relevant impact,' and use 'the best scientific data available.' [citation omitted] It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking.

Bennett, 520 U.S. at 172.

Unlike the situation in NRDC v. Fox, the Secretary of Interior and the FWS seemingly complied with all of the mandatory procedural requirements associated with making a determination about critical habitat designation. See 909 F. Supp. at 157. As mandated by the ESA, the Secretary and the FWS made a determination on critical habitat "concurrently with making a determination [that the Cahaba shiner] is an endangered species." 16 U.S.C. § 1533(a)(3)(A). The fact that this determination deemed that critical habitat was not prudent does not amount to a failure by the Secretary or the FWS to discharge its duty to make such a determination. There have been no suggestions that in deciding not to designate critical habitat, the Secretary or the FWS did not take into consideration the economic and other relevant impact and use the best scientific data available. See 16 U.S.C. § 1533(b)(2). Furthermore, while authority is given to revise any designations that are made from "time to time," the plain language of the ESA makes clear that the Secretary's duties with respect to critical habitat designation are not ongoing. See 16 U.S.C. § 1533(a)(3)(A)("The Secretary...to the maximum extent prudent and determinable-shall, concurrently with making a determination...that a species is an endangered or threatened species, designate any habit of such species *which is then considered to be a critical habitat*.")(emphasis added).

In the present case, the Secretary of Interior and the Fish and Wildlife Services followed proper procedure in making the discretionary decision to not designate critical habitat for the Cahaba shiner. The public was informed of this decision through the publication of the final rule on October 25, 1990. Plaintiffs make no contention that they lacked knowledge of this decision at that time. As such, plaintiff's claims against the Secretary and the FWS brought on January 19, 1999 are time-barred by 28 U.S.C. § 2401(a). Application of this statute of limitations to critical habitat designations under the ESA will not, as Plaintiffs contend, foreclose the ability to secure protection for future discoveries made with respect to endangered species after a listing has been made. While there is no mandatory continuation of the Secretary's duty to designate critical habitat subsequent to the final agency determination, any person may submit a written petition to the Secretary of the Interior requesting that a critical habitat be established for an endangered species. See 16 U.S.C. § 1532(5)(B). Such a submission would trigger a mandatory duty for the Secretary to promptly

conduct a review of the situation and take appropriate action. 50 C.F.R. § 424.14(d). Therefore, while plaintiffs may be barred by the statute of limitations from challenging the Secretary's initial decision regarding critical habitat, they may be successful in forcing the Secretary to review the decision in light of new discoveries.

Accordingly, the Defendants' Motion to Dismiss is due to be granted at this time because Plaintiffs' claims are time-barred by 28 U.S.C. § 2401(a). As such, Defendants' defense based upon the equitable doctrine of laches need not be considered.

### Conclusion

For the foregoing reasons, the Defendants' motion to dismiss is hereby granted.

Dated: *Sept. 7*, 1999

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Ray Vaughan
    Ms. Janice M. Schneider